UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 3:20-cr-93-MMH-JBT

EDWARD ALAN HARDIN

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Fourth Amendment Based Motion to Suppress Evidence (Doc. 25), Defendant's Fifth and Sixth Amendment and *Miranda* Based Motion to Suppress Statements (Doc. 26), Defendant's Supplemental Fourth Amendment Based Motion to Suppress Evidence (Doc. 65) ("Motions"), the United States' Omnibus Response in Opposition to Defendant's Motions to Suppress (Doc. 49), and the United States Response in Opposition to Defendant's Supplemental Fourth Amendment Based Motion to Suppress Evidence (Doc. 67) ("Responses"). The undersigned held an evidentiary hearing on August 18, 2021.   (Doc. 69; "Tr.").[2]   For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Motions be **DENIED**.

_____

[1] "Within 14 days after being served with a copy of the recommended disposition [of a motion], . . . a party may serve and file specific written objections to the proposed findings and recommendations."   Fed. R. Crim. P. 59(b)(2).   "Failure to object in accordance with this rule waives a party's right to review."   *Id.*; *see also* 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

[2] Citations to the transcript reflect the pagination generated by CM/ECF, not the internal pagination of the transcript.

## I.      Summary of Recommendation

Defendant makes a number of arguments in support of the Motions.  The undersigned recommends that none of these arguments has merit.  Regarding the alleged Fourth Amendment violations, Defendant first argues that an unconstitutional detention and seizure of him occurred "from the moment Officer Wiggins (with the Clay County Sheriff's Office ("CCSO")) arrived on-scene."  (Doc. 25 at 1–2.)  He maintains that a reasonable person in his position would not have felt free to leave because of Officer Wiggins' "approach, manner, attitude and tone." (*Id.* at 3.)  The undersigned recommends that the evidence does not support this argument.  The Government proved by a preponderance of the evidence that the encounter between Officer Wiggins and Defendant (with the minor alleged victim also present) was consensual at least up to the point when Officer Wiggins asked the minor to step out of the truck.  The factors that support this conclusion include that Officer Wiggins did not activate his blue lights or siren, he did not display any weapons, he did not yell or raise his voice at Defendant, and Defendant's path was not blocked or impeded.  (Tr. 20, 23, 40–42.)

Defendant next argues that when he was eventually detained, Officer Wiggins' observations did not provide reasonable suspicion to justify the detention. (Doc. 65 at 1.)  The undersigned recommends that this argument be rejected as well.   By the time Officer Wiggins detained Defendant, he had reasonable suspicion of criminal activity.  When Officer Wiggins first approached Defendant's truck, which was parked behind a "shuttered-down" building in a parking lot that

was "typically fairly empty," he noticed only Defendant.  (Tr. 15, 19, 21; *see* Doc. 68-6.)   Then, as he continued to approach the truck from the rear, he "saw somebody's head rise from the passenger's seat of the vehicle." (Tr. 22.)   Once Officer Wiggins got to the passenger side of Defendant's truck, he observed that Defendant's "zipper was unzipped completely" and "his pants area where the zipper is was wide open." (Tr. 25.)  He also observed that the female passenger appeared to be underage and Defendant appeared to be an adult. (Tr. 24.)  Also, Defendant and the minor female both appeared to be nervous, and Officer Wiggins smelled burnt marijuana.   (Tr. 25–26.)   In short, Officer Wiggins had a particularized and objective basis to suspect illegal activity.  Therefore, the *Terry* stop was justified. [3]

Defendant next argues that the officers impermissibly extended the stop. (Doc. 65 at 2.)  The undersigned recommends that the Court reject this argument as well.   The scope of the investigation was reasonably related to the circumstances presented, and the officers diligently pursued the investigation. Officer Wiggins asked the minor to step out of the truck, he confirmed that she was a minor and that Defendant was in his thirties, and he confirmed with the minor that Defendant had been smoking marijuana.  (Tr. 30–31.)  Because Officer Wiggins reasonably suspected unlawful sexual activity, Detective Eva Solis, a sex

---

[3] "[I]n justifying [an] intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

crimes detective, was called to the scene.  The minor told Detective Solis that she and Defendant had been having sexual intercourse in the truck prior to Officer Wiggins' arrival.  (Tr. 98.)  At that point, there was probable cause to arrest Defendant. The undersigned recommends that the Government proved by a preponderance of the evidence that the officers did not impermissibly extend Defendant's detention.

Regarding the alleged Fifth and Sixth Amendment violations, Defendant first argues that he was not read his *Miranda* warnings.[4]  (Doc. 26 at 4.)  However, Officer Wiggins testified that he read the *Miranda* warnings twice to Defendant from a department-issued card.  (Tr. 37–38.)  He read them twice because Defendant stated that he did not understand his rights after the first reading but stated that he understood them after the second, line-by-line reading.  (Tr. 37.)  Moreover, Detective Solis confirmed with Officer Wiggins that he had read Defendant his *Miranda* rights.  (Tr. 106.)  Further, when asked by Detective Solis in the recorded interview whether he remembered "the rights that—that Deputy Wiggins read you," Defendant nodded his head yes.  (Doc. 68-4 at 2.)  Thus, the undersigned recommends that the Government proved by a preponderance of the evidence that Defendant was read and understood his *Miranda* rights.

Finally, Defendant argues that, during his interview with Detective Solis, he invoked his right to counsel by stating: "I'm being completely honest as I can be

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

without a lawyer being here, presented." (*Id.* at 4.)  Defendant maintains that the interview should have ceased at that point.  (*See* Doc. 26 at 4–5.)  However, immediately after that statement, Defendant continued to speak without being questioned.  (Doc. 68-4 at 4–5.)   Detective Solis then asked Defendant if he wanted a lawyer present and told Defendant "[i]t's completely up to you if you want to keep talking." (*Id.* at 5.)  Defendant then continued to speak.  (*See id.* at 5–9.)  Thus, the undersigned recommends that Defendant's invocation of his right to counsel was not unequivocal, as required by controlling law.[5]

Thus, the undersigned recommends that the Motions be denied.

## II.    Summary of Evidence

At the evidentiary hearing, the Government called three witnesses: Richard Wiggins ("Officer Wiggins"), Sergeant Chris Ruby ("Sergeant Ruby"), and Detective Eva Solis ("Detective Solis").   The Government also admitted four exhibits into evidence: (1) Government's Exhibits 1 and 1A (the audio-visual recorded disc copy of Defendant's interview with Detective Solis and the transcript thereof) (Doc. 68-3; Doc. 68-4); (2) Government's Composite Exhibit 2 (photographs of Defendant's black GMC truck parked behind 797 Blanding Boulevard) (Doc. 68-5); (3)

---

[5] "[I]f a suspect during police questioning makes an 'ambiguous' or 'equivocal' reference to an attorney, such 'that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel' under *Miranda*, the police need not cease questioning the suspect." *Owen v. Fla. Dep't of Corrections*, 686 F.3d 1181, 1187 (11th Cir. 2012) (quoting *Davis v. U.S.*, 512 U.S. 452, 459 (1994)).

Government's Composite Exhibit 3 (photographs of 797 Blanding Boulevard during daylight hours) (Doc. 68-6); and (4) Government's Composite Exhibit 4 (aerial photographs of 797 Blanding Boulevard and a map of the surrounding area). (Doc. 68-7.) Defendant called no witnesses but admitted two exhibits into evidence: (1) Defendant's Exhibit 1 (CCSO's event report from the encounter with Defendant including a radio call log) (Doc. 68-8); and Defendant's Exhibit 2 (an Incident Investigation Report and additional attachments thereto). (Doc. 68-9; Doc. 68-10.)

Generally, the undersigned found all of the Government's witnesses credible and accepts their testimony. Any minor inconsistencies in the evidence do not undermine the overall credibility of these witnesses.

### A. Officer Richard Wiggins

Officer Wiggins first testified that he has about eight years of law enforcement experience between his time with the Jacksonville Sheriff's Office and CCSO. (Tr. 6.) He has had extensive law enforcement training. (Tr. 7.)

At approximately 6:00 p.m. on May 8, 2020, Officer Wiggins was conducting a regular property check near 797 Blanding Boulevard ("797 Blanding"). (Tr. 13–14; *see* Doc. 68-8.) Officer Wiggins entered a parking lot from Blanding Boulevard and maneuvered his patrol vehicle towards the back of the parking lot where he observed Defendant's black GMC truck parked behind the building numbered 797 Blanding. (Tr. 15.) Seeing Defendant's truck parked behind 797 Blanding piqued Officer Wiggins' interest because he had driven behind this building regularly and

had never seen a vehicle parked there before. (Tr. 15–16.) Officer Wiggins also knew that the building was abandoned and the parking lot was usually fairly empty. (Tr. 15–16, 19; *see* Doc. 68-6.)

Officer Wiggins then, without activating his vehicle's sirens, lights, or loudspeaker, or blocking Defendant's truck from leaving, approached Defendant's truck from behind. (Tr. 20, 23–24.) At first, Officer Wiggins noticed only Defendant in the driver's seat of the truck. (Tr. 21.) Soon after observing Defendant alone in the truck, Officer Wiggins observed a head rise from the passenger side of the vehicle. (Tr. 22, 52–53.) Once Officer Wiggins arrived at the open passenger window of Defendant's truck, he observed that Defendant's "zipper was unzipped completely" and "his pants area where the zipper is was wide open," which Officer Wiggins stated was "kind of a red flag." (Tr. 25.) Officer Wiggins further observed that the passenger, a female, appeared to be underage, and that Defendant and the minor appeared to be nervous. (Tr. 25.) He also smelled the strong odor of burnt marijuana. (Tr. 26, 49.) Officer Wiggins verified Defendant and the minor's names and dates of birth, and was able to confirm that the minor was 17 years old while Defendant was in his thirties. (Tr. 28.) Officer Wiggins testified that the circumstances he observed led him to suspect that unlawful sexual activity between the minor and Defendant had recently occurred. (Tr. 29.)

Next, Officer Wiggins asked the minor to step out of the truck and talk with him alone. (Tr. 30.) During their conversation, the minor stated that Defendant had been smoking marijuana in the truck. (Tr. 31.) After speaking with the minor,

7

Officer Wiggins asked Defendant to exit the truck because he believed he had reason to detain Defendant based on a suspicion of unlawful sexual activity, and also probable cause to search the truck for marijuana.  (Tr. 32–33.)

Officer Wiggins then placed Defendant in handcuffs and read him his *Miranda* warnings via a standard card issued by CCSO.  (Tr. 37–38.)  He read the entire *Miranda* card to Defendant word-for-word; however, at first, Defendant indicated he did not understand the rights read to him.  (Tr. 37.)  Officer Wiggins then re-read the *Miranda* warnings line-by-line.  *Id.*  He paused after reading each line and asked Defendant whether he understood, and Defendant responded in the affirmative each time.  *Id.*

On cross-examination, Defendant brought out that Officer Wiggins initially called in that there were two occupants in the truck.  (Tr. 52.)  However, Officer Wiggins explained that he did initially observe only one occupant and may have been calling in on his portable radio as he was walking towards the truck.  (Tr. 53.)  Neither this discrepancy nor any other point brought out on cross-examination substantially affected Officer Wiggins' credibility.

### B. Sergeant Chris Ruby

Next, the Government called Sergeant Ruby, who first testified that he was Officer Wiggins' patrol sergeant on May 8, 2020.  (Tr. 74.)  Sergeant Ruby further testified that he specifically asked for a sex crimes detective to come to the scene because he believed that there might have been unlawful sexual activity between Defendant and the minor.  (Tr. 82–83.)  Sergeant Ruby also testified that

Defendant's truck had a clear path to exit the parking lot, and that no law enforcement officer present at the scene ever used lights or sirens, drew a weapon, or yelled at Defendant. (Tr. 77–79.) Sergeant Ruby also verified that he heard Officer Wiggins read Defendant his *Miranda* warnings from a CCSO issued card. (Tr. 81.)

On cross-examination, Sergeant Ruby testified that Officer Wiggins read Defendant his *Miranda* warnings only once, but Sergeant Ruby did not listen to every word. (Tr. 86.) Further, it was revealed that Officer Wiggins was under internal investigation when he resigned from CCSO. (*Id.* at 86–87.) Regarding the *Miranda* warnings, the undersigned accepts Officer Wiggins' testimony that he read the warnings twice because he would likely have a better recollection on this point than Sergeant Ruby, and Sergeant Ruby may not have heard both readings. In addition, the internal investigation has no significant impact on Officer Wiggins' credibility.

### C.    Detective Eva Solis

Finally, the Government called Detective Solis. Detective Solis first testified that she has about five years of experience as a law enforcement officer, about three years of which she has served as a detective, and that she has received extensive law enforcement training. (Tr. 93.) Detective Solis also testified that, as a detective in the special victims' unit, she handles child and elder abuse as well as sex crimes cases. (Tr. 94.)

Detective Solis arrived on scene at approximately 6:57 p.m. (Tr. 65.) She

testified that when she interviewed the minor at the scene, the minor disclosed that she and Defendant had sexual intercourse inside of Defendant's truck just prior to Officer Wiggins' arrival.  (Tr. 98.)  At that time, Detective Solis knew that the minor was seventeen and Defendant was in his thirties; therefore, sexual intercourse between the two was illegal in Florida.  (Tr. 98–99.)

Detective Solis confirmed with Officer Wiggins that he had read Defendant his *Miranda* warnings.  (Tr. 100.)  During Detective Solis' interview with Defendant, she asked him, "[D]o you remember the rights that—that Deputy Wiggins read you?"  (Doc. 68-4 at 1; Tr. 104.)   Defendant responded by nodding his head but did not make any audible confirmation, which prompted Detective Solis to ask again, "You do? Do you understand your rights and everything?"  (Doc. 68-4 at 1; Tr. 104–5.)  Defendant responded again by nodding his head.  (Doc. 68-4 at 1.)  Detective Solis testified that nothing about Defendant's body language or response caused her to be concerned that Defendant was not given his *Miranda* warnings or did not understand his rights.  (Tr. 104–5.)

At one point in the interview, Defendant stated, "I'm being completely honest as I can be without a lawyer being here, presented."  (Doc. 68-4 at 4; Tr. 107.)  Before Detective Solis could respond to Defendant's mention of a lawyer, Defendant immediately continued speaking without being prompted.  (Doc. 68-4 at 3–4; Tr. 109.)  Detective Solis then attempted to clarify whether Defendant was requesting to have an attorney present or whether he was just not sure how to proceed—Defendant stated that he was "not sure how to continue with it."  (Doc.

68-4 at 5; Tr. 109–10.)  Then, Detective Solis stated, "It's completely up to you if you want to keep talking."  (Doc. 68-4 at 5.)  Detective Solis testified that Defendant neither clearly indicated that he wanted an attorney present nor that he did not want to answer any further questions.  (Tr. 107–8.)

On cross-examination, Detective Solis was asked whether the minor ever denied having sexual intercourse with Defendant.  (Tr. 114.)  Detective Solis responded by stating that, at first, the minor denied having sexual intercourse with Defendant but then admitted to it.  (*Id.*)

## III.   Analysis

The undersigned recommends that the Government proved by a preponderance of the evidence that CCSO did not violate Defendant's Fourth or Fifth Amendment rights.[6]  "[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."  *U.S. v. Matlock*, 415 U.S. 164, 177 n.14 (1974).  Therefore, the undersigned recommends that the Motions are due to be denied.

### A.   Alleged Fourth Amendment Violations

"'The Fourth Amendment prohibits 'unreasonable searches and seizures.' 'Evidence obtained in violation of the Fourth Amendment must be suppressed.'

---

[6] Although Defendant also relies on the Sixth Amendment right to counsel, that right had not yet attached.  "The Sixth Amendment entitles criminal defendants to counsel, and this right 'attach[es] [when] a prosecution is commenced . . . [by] the initiation of adversary judicial criminal proceedings[.]'"  *U.S. v. Dixon*, 901 F.3d 1332, 1340 (11th Cir. 2018) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)) (internal citations omitted).

Whether a search or seizure is reasonable 'depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.'"

*U.S. v. Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir. 2021) (citations omitted).

Defendant contends that he was seized in violation of the Fourth Amendment and that CCSO impermissibly extended his detention. (Doc. 25 at 3–4; Doc. 65 at 2.) For the following reasons, the undersigned recommends that neither of these arguments has merit.

### 1.   Defendant's Seizure Was Constitutional

In *Gonzalez-Zea*, the Eleventh Circuit stated,

> In *Terry*, the Supreme Court adopted "a dual inquiry for evaluating the reasonableness of an investigative stop." Under *Terry*'s two-part inquiry, we first examine "whether the officer's action was justified at its inception," which turns on whether the officers had a reasonable suspicion that the defendant had engaged in, was engaging in, or was about to engage in, a crime. In the second part of the inquiry, we consider "whether [the stop] was reasonably related in scope to the circumstances which justified the interference in the first place."

*U.S. v. Gonzalez-Zea*, 995 F.3d at 1302 (citations omitted).

First, Defendant argues that his encounter with Officer Wiggins was not consensual, and that his seizure was not justified at its inception because there was no reasonable suspicion of criminal activity. (Doc. 25 at 3–4.) The undersigned recommends that the initial encounter was consensual, and it eventually evolved into a *Terry* stop supported by reasonable suspicion. Additionally, the undersigned recommends that upon a reasonable and not unduly prolonged investigation, probable cause to arrest Defendant arose at the scene.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980). "There are three broad categories of police-citizen encounters for purposes of [a] Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *U.S. v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006) (citation omitted).  Defendant's encounter with CCSO involved each of these categories and CCSO complied with all relevant standards.

First, Officer Wiggins' initial encounter with Defendant was consensual—it involved no coercion or detention. "The Eleventh Circuit has explained the difference between 'police–citizen exchanges involving no coercion or detention,' which are not seizures, and 'brief seizures or investigatory detentions' . . . which do implicate the Fourth Amendment." *U.S. v. Mestre*, 362 F. Supp. 3d 1175, 1179 (M.D. Ala. 2019) (quoting *Perez*, 443 F.3d at 777).  When determining whether a reasonable person would believe he was free to leave, courts consider

> whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

*Perez*, 443 F.3d at 778 (quoting *U.S. v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991)).  Police questioning alone is likely to be insufficient.  *INS v. Delgado*, 466 U.S. 210, 216 (1984).  Moreover, the Eleventh Circuit has held that a police officer

does not seize an individual merely by approaching that individual in a parked car. *See, e.g., Miller v. Harget*, 458 F.3d 1251, 1257–59 (11th Cir. 2006) (holding that the defendant was not seized within the meaning of the Fourth Amendment where the police parked behind the vehicle, approached the defendant's vehicle in a non-aggressive manner, and neither brandished weapons, gave directions, nor activated roof lights); *U.S. v. Knights*, 989 F.3d 1281, 1286–87 (11th Cir. 2021) (no seizure was found where the defendant was capable of driving away, the officers did not display weapons, and the officers did not issue any commands).

Here, Defendant's argument that he was not free to leave "[f]rom the moment Officer Wiggins arrived on-scene" based on "Officer Wiggins' approach, manner, attitude and tone—*i.e.* his display of official authority" is contrary to the evidence.  (Doc. 25 at 1, 3.)  Like the factors presented in *Miller* and *Knights*, Officer Wiggins' parking his patrol vehicle behind Defendant's truck (Tr. 20), walking at a normal pace towards Defendant's truck (Tr. 23), and speaking with Defendant in a normal tone through a previously opened window (Tr. 24, 42) does not indicate a display of official authority that would cause a reasonable person to believe he was not free to leave.  Moreover*,* Officer Wiggins did not block Defendant in (Tr. 23–24), use sirens or roof lights (Tr. 42), brandish his weapon (Tr. 40), or give Defendant any commands during the initial encounter.  (Tr. 20.)  Thus, the beginning of Defendant's encounter with CCSO was consensual and does not qualify as a seizure under the Fourth Amendment.

Second, the encounter between Officer Wiggins and Defendant evolved into a constitutional seizure, or *Terry* stop, when Officer Wiggins asked the minor to exit Defendant's truck.  Here, as Officer Wiggins pointed out during his testimony, a reasonable person would likely not feel free to leave a minor abandoned in a parking lot.  (Tr. 46–47.)  Thus, Defendant was seized within the meaning of the Fourth Amendment from the moment Officer Wiggins asked the minor to exit Defendant's truck.  (Tr. 46–48.)

However, by the time Officer Wiggins asked the minor to exit the truck, the stop was justified.  "[W]hether [a stop] was justified at its inception . . . turns on whether the officers had a reasonable suspicion that the defendant had engaged, or was about to engage, in a crime," *U.S. v. Acosta*, 363 F.3d 1141, 1144–45 (11th Cir. 2004) (citations omitted).  An officer's reasonable suspicion must be grounded in specific, articulable facts that are related to the suspected crime.  *See Gonzalez-Zea*, 995 F.3d at 1303.  This analysis "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  *Id.* at 274 (citation omitted). "[T]he Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

15

The undersigned recommends that Officer Wiggins' suspicion that a sex crime had been committed was reasonable based on the totality of the circumstances.   First, Officer Wiggins testified that when he approached Defendant's truck, he initially observed Defendant alone, and then saw the minor rise into view from the passenger side.  (Tr. 22.)  Most prominently, once Officer Wiggins reached Defendant's truck, he observed that Defendant's pants were unzipped, and the pants area where the zipper is located was wide open.  (Tr. 25.)  This, combined with the area where the truck was parked, the apparent ages and nervousness of Defendant and the minor, and the smell of burnt marijuana, were sufficient to support a reasonable suspicion that illegal sexual activity had occurred.  (Tr. 24–25.)  Thus, the undersigned recommends that the stop was justified at its inception.[7]

## 2.    The Stop Was Not Unlawfully Prolonged

In addition to being supported by reasonable suspicion, a *Terry* stop must be "reasonably related in scope to the circumstances which justified the interference in the first place."  *Gonzalez-Zea*, 995 F.3d at 1305 (quoting *Terry*, 392 U.S. at 20).  An investigatory detention under *Terry* must last no longer than necessary to effectuate the purpose of the stop. *See Gonzalez-Zea*, 995 F.3d at

---

[7] Moreover, Officer Wiggins had probable cause to search the vehicle for marijuana.  *See, e.g., U.S. v. Hunter*, 373 F. App'x 973, 976 (citing *U.S. v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991)) (holding that the odor of marijuana coming from a vehicle gave rise to a lawful basis to seize an individual and conduct a search of his vehicle).  Officer Wiggins did a brief search of the truck and found some partially smoked marijuana cigarettes.  (Tr. 42.)

1305.  To determine the reasonable duration of a stop, courts look to whether the officers "diligently pursued the investigation."  *U.S. v. Braddy*, No. 19-12823, 2021 WL 3876938, at *7 (11th Cir. Aug. 31, 2021) (citing *U.S. v. Sharpe*, 470 U.S. 675, 686 (1985)).  There is no magic length of time after which a *Terry* stop becomes unconstitutional.  *See Braddy*, 2021 WL 3876938, at *7.

The undersigned recommends that the length of the *Terry* stop was constitutional because the stop was reasonably related in scope to the circumstances presented and the officers were diligent in pursuing their investigation.  Officer Wiggins' suspicion of illegal sexual activity between the minor and Defendant justified the stop at its inception.  Officer Wiggins and CCSO then proceeded to conduct an investigation reasonably related to that inquiry.  First, it was reasonable for Officer Wiggins to ask the minor to step out of the truck to question her alone.  Next, it was reasonable for CCSO to call Detective Solis to the scene based on the nature of the crime being investigated.  In addition, Detective Solis arrived on the scene within an hour of Officer Wiggins' first report.  (Tr. 53, 65–66; *see* Doc. 68-8.)  Finally, it was reasonable for Detective Solis to talk to the minor and inquire about what she and Defendant had been doing in the truck.  Once the minor admitted to having sexual intercourse with Defendant, probable cause to arrest Defendant arose.  Therefore, the undersigned recommends that the *Terry* stop was not only justified at its inception, but also reasonable in scope.

17

### 3.     Probable Cause to Arrest Defendant Arose at the Scene

Although not expressly challenged in the Motions, the undersigned recommends that probable cause to arrest Defendant arose at the scene when the minor told Detective Solis that she and Defendant had been having sexual intercourse in the truck.  (*See* Tr. 98.)  "Probable cause to arrest exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013) (quotation omitted).    "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Here, there was probable cause to arrest Defendant based on the minor's admission and the surrounding circumstances; therefore, Defendant's transportation to the CCSO substation for questioning was lawful.  (*See* Tr. 98–99; Fla. Stat. § 794.05(1).)

### B.    Alleged Fifth Amendment Violations

Defendant also alleges violations of his Fifth Amendment rights.  (*See* Doc. 26.)  The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  "Under the Fifth Amendment, statements a defendant makes during a custodial interrogation may not be used against him in court unless the government first advises the defendant of his rights as set forth in *Miranda v. Arizona*, 384 U.S. 436,

479 [ ] (1966)." *United States v. Woods*, 684 F.3d 1045, 1055 (11th Cir. 2012) (citation omitted).   The right to *Miranda* warnings under the Fifth Amendment attaches at the start of custodial interrogation.   *U.S. v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010).

Defendant contends that he was not given *Miranda* warnings, and that he invoked his Fifth Amendment right to counsel. (*See* Doc. 26.)   The evidence supports a finding that Officer Wiggins read Defendant his *Miranda* warnings, and that Defendant never invoked his Fifth Amendment right to counsel.

### 1.      Defendant Was Read His *Miranda* Warnings

First, Defendant argues that the statements he made to CCSO officers on May 8, 2020, should be suppressed because "it is unclear whether *Miranda* warnings were given, and if they were given, if the warnings given met the requirements of the *Miranda* rule."  (Doc. 26 at 4.)

For *Miranda* warnings to comply with the Fifth Amendment,

> [a] suspect must be warned prior to any questioning (1) that he has the right to remain silent, (2) that anything he says can be used against him in a court of law, (3) that he has the right to the presence of an attorney, and (4) that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Florida v. Powell*, 559 U.S. 50, 59–60 (2010) (quotation omitted).  The Supreme Court has never held that the reading of these warnings requires precision and rigidity.  *See id.* at 60; *Woods*, 684 F.3d at 1055.  Rather, the inquiry is simply whether the warnings reasonably provide a suspect notice of these rights as required by *Miranda*.  *See Woods*, 684 F.3d at 1055.

Here, Officer Wiggins and Sergeant Ruby both testified that Defendant was read his *Miranda* warnings from a CCSO issued card.  (*See* Tr. 37–38, & 81.) Officer Wiggins testified that he read the warnings twice, and that the second time was line-by-line, with Defendant confirming his understanding of each line.  (Tr. 37–38.)  Moreover, Detective Solis confirmed with Officer Wiggins that he read Defendant his *Miranda* rights.  (Tr. 106.)  She also confirmed that with Defendant himself when she asked him, "[D]o you remember the rights that—that Deputy Wiggins read you?"  (Doc. 68-4 at 2.)  Defendant nodded his head yes.  (*Id.*)  Thus, the undersigned recommends that the Government proved by a preponderance of the evidence that Defendant was read and understood his *Miranda* rights.

## 2.    Defendant Did Not Invoke His Fifth Amendment Right to Counsel

Finally, Defendant argues that his mention of an attorney during the interview with Detective Solis invoked his Fifth Amendment right to counsel.  (Doc. 26 at 4–5.)  This argument is unsupported by the evidence.

Invocation of the Fifth Amendment right to counsel under *Miranda* requires a statement that can reasonably be construed to be an expression of a desire for an attorney; however, if a suspect makes a reference to an attorney that is ambiguous or equivocal, such that that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, the officer is not required to cease questioning. *See Owen v. Fla. Dep't of Corrections*, 686 F.3d 1181, 1192–93 (11th Cir. 2012).  Further, if the

suspect makes an equivocal or ambiguous statement concerning the right to counsel, the police are not required to ask questions to clarify. *See id.* For example, in *U.S. v. Degaule*, 797 F. Supp. 2d 1332, 1382 n.56 (N.D. Ga. 2011) (collecting numerous cases), the court held that a defendant's question during an interview with police, "Do I call my attorney now?" was too equivocal to constitute an invocation of the right to counsel.

Here, Defendant's statement, "I'm being completely honest as I can be without a lawyer being here, presented" is, at best, an equivocal or ambiguous request for an attorney. (Doc. 68-4 at 4.) Moreover, Defendant continued to talk after this statement, and Detective Solis attempted to clarify Defendant's statement by asking, "Do you have a lawyer or a friend, you want one present, or you're just not sure how to continue?" (Doc. 68-4 at 4–5.) To which Defendant responded, "Yeah, I'm not sure how to—to continue with it." (*Id.* at 5.) Detective Solis then stated, "It's completely up to you if you want to keep talking." (*Id.*) Defendant then continued to talk, stating, "[w]hatever was done was consensual between the both of us, if any kind of thing was said or done." (*Id.*) Defendant never raised the issue of an attorney again but proceeded with the interview. (*Id.* at 5–9.) Thus, the undersigned recommends that Defendant did not invoke the Fifth Amendment right to counsel and the statements made following Defendant's mention of an attorney should not be suppressed.

For all of the foregoing reasons, it is respectfully **RECOMMENDED** that:

The Motions (**Docs. 25, 26 & 65**) be **DENIED**.

**DONE AND ENTERED** in Jacksonville, Florida on September 20, 2021.


JOEL B. TOOMEY
United States Magistrate Judge


Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record