**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                          Case No.  3:20-cr-93(S1)-MMH-JBT

EDWARD ALAN HARDIN

_____/

**O R D E R**

**THIS CAUSE** is before the Court on Defendant's Fourth Amendment

Based Motion to Suppress Evidence (Doc. 25), filed October 2, 2020; Defendant's

Fifth and Sixth Amendment and <u>Miranda</u> Based Motion to Suppress

Statements (Doc. 26), filed October 2, 2020; and Defendant's Supplemental

Fourth Amendment Based Motion to Suppress Evidence (Doc. 65), filed July 15,

2021 (collectively, "Motions").   Charged under a nine-count Superseding

Indictment (Doc. 45), Defendant Edward Alan Hardin argues in the Motions

that all evidence flowing from his initial contact with law enforcement on May

8, 2020, should be suppressed.  <u>See</u> Defendant's Fourth Amendment Based

Motion to Suppress Evidence at 1.  The undersigned referred the Motions to the

Honorable Joel B. Toomey, United States Magistrate Judge, for preparation of

a report and recommendation, and the Magistrate Judge held an evidentiary

hearing on August 18, 2021.  <u>See</u> Clerk's Minutes (Doc. 68), filed August 18,

2021; Transcript of Motion Hearing (Doc. 69; Tr.), filed August 26, 2021.  On

September 20, 2021, the Magistrate Judge filed a Report and Recommendation (Doc. 71; Report), recommending that the Motions be denied. Both parties timely filed objections. See United States' Limited Objection to the Magistrate Judge's Report and Recommendation Concerning Defendant's Motions to Suppress (Doc. 80; United States' Objection), filed November 4, 2021; Objection(s) to Magistrate's Report and Recommendation (Doc. 81; Hardin's Objections), filed November 4, 2021.[1] Accordingly, this matter is ripe for review.

Because the Court finds that the objections are due to be overruled and that the Report, with a minor modification, is due to be adopted as the Court's opinion, the Court will not repeat the factual and procedural history or the arguments and authority addressed in the Report. Instead, the Court writes briefly only to address the parties' specific objections.

## I. Standard of Review

The Court reviews a magistrate judge's report and recommendation in accordance with the requirements of Rule 59, Federal Rules of Criminal

---

[1] Throughout Hardin's Objections, counsel refers to Judge Toomey as "the Magistrate." Counsel should note that in 1990, the United States Congress intentionally, and after much consideration, changed the title of each United States magistrate to "United States magistrate judge." See Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 321 (1990) ("After the enactment of this Act, each United States magistrate appointed under § 636 of Title 28 United States Code, shall be known as a United States magistrate judge . . . ."); see also Ruth Dapper, A Judge by Any Other Name? Mistitling of United States Magistrate Judges, 9 Fed. Cts. L. Rev. 1, 5 (Fall 2015). As such, in future filings in this or any other court, counsel should refer to a magistrate judge properly as "Judge _____" or the "Magistrate Judge." See Koutrakos v. Astrue, 906 F. Supp. 2d 30, 31 n.1 (D. Conn. 2012) (pointing out the proper way to refer to a United States magistrate judge).

Procedure (Rule(s)) and 28 U.S.C. § 636(b)(1).  The Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1); see also Rule 59(b)(3).   "[I]n determining whether to accept, reject, or modify the magistrate's report and recommendations, the district court has the duty to conduct a careful and complete review."  Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (quoting Nettles v. Wainwright, 677 F.2d 404, 408 (5th Cir. Unit B 1982)[2]). Additionally, pursuant to Rule 59 and § 636(b)(1), where a party timely objects to the magistrate judge's report and recommendation, "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); see also Rule 59(b)(3); Thomas v. Arn, 474 U.S. 140, 149–50 (1985).   Nevertheless, while de novo review of a magistrate judge's recommendation is required only where an objection is made, the Court always

---

[2]   In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit (including Unit A panel discussions of that circuit) handed down prior to October 1, 1981.  W.R. Huff Asset Mgmt. Co., L.L.C. v. Kohlberg, Kravis, Roberts & Co., L.P., 566 F.3d 979, 985 n.6 (11th Cir. 2009).  After October 1, 1981, "only decisions of the continuing Fifth Circuit's Administrative Unit B are binding on this circuit . . . ."  Dresdner Bank AG v. M/V Olympia Voyager, 446 F.3d 1377, 1381 n.1 (11th Cir. 2006).  The Court notes that the Fifth Circuit overruled Nettles, in part, on other grounds, in Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1), as recognized in Alabama-Coushatta Tribe of Tex. v. United States, 757 F.3d 484 (5th Cir. 2014). However, "that does not change the binding effect of Nettles in this Circuit because Douglass was decided after October 1, 1981 and was not a Unit B decision."  United States v. Schultz, 565 F.3d 1353, 1360 n.4 (11th Cir. 2009).

retains the authority to review such a recommendation in the exercise of its discretion.  See Rule 59 advisory committee notes (2005) (citing Thomas, 474 U.S. at 154; Mathews v. Weber, 423 U.S. 261, 270–71 (1976)).

In deciding whether to reject or accept the magistrate judge's recommendations, a district judge retains the power "to hear additional testimony or the same testimony all over again if [she decides] that [it] would be beneficial in determining the motion."  United States v. Marshall, 609 F.2d 152, 154 (5th Cir. 1980) (alteration added); United States v. Raddatz, 447 U.S. 667, 680 (1980) ("[A district judge's] broad discretion includes hearing the witnesses live to resolve conflicting credibility claims."); see also Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1251 (11th Cir. 2007) ("[T]he district court may, if it so chooses, conduct its own hearing as a prelude to making a new determination.").  However, if a district court elects to reject a magistrate judge's credibility determinations on critical fact issues, the court must first rehear the disputed testimony.  Louis v. Blackburn, 630 F.2d 1105, 1110 (5th Cir. 1980)[3]; United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir.

---

[3]  In Ballard v. Comm'r of Internal Revenue, 429 F.3d 1026 (11th Cir. 2005) (per curiam), the Eleventh Circuit states that "[a] district court must defer to a magistrate's findings unless the magistrate's understanding of facts is entirely unreasonable."  Ballard, 429 F.3d at 1031.  To the extent Ballard conflicts with Blackburn and Marshall, the Court notes that "where two prior panel decisions conflict" the Court is "bound to follow the oldest one."  Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000).  Regardless, the Court need not resolve this conflict because the undersigned will accept the Magistrate Judge's credibility determinations.  As set forth below, the Court can discern no basis in the record to

2001) (per curiam); see also Amlong & Amlong, P.A., 500 F.3d at 1250 ("[A] district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings.").  Indeed, only in the "rare case" where "'there . . . [is] found in the transcript an articulable basis for rejecting the magistrate's original resolution of credibility and that basis . . . [is] articulated by the district judge'" may the district court reject the credibility findings without rehearing the witness testimony.  Cofield, 272 F.3d at 1306 (quoting Marshall, 609 F.2d at 155); Amlong & Amlong, P.A., 500 F.3d at 1250. In contrast, "a district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings." Cofield, 272 F.3d at 1305 (emphasis added) (citing Raddatz, 447 U.S. at 675–76).

## II.    Analysis of Objections

### A.    Hardin's Objections

Hardin raises several objections to the Magistrate Judge's recommended factual findings and legal conclusions. See Hardin's Objections at 2–6.  For the reasons discussed below, the Court finds that each of Hardin's objections is due to be overruled.

---

doubt the Magistrate Judge's findings, much less to suggest that the findings are "entirely unreasonable."

### i.     Credibility of Officer Wiggins

Hardin objects to the Magistrate Judge's finding that all of the United States' witnesses were credible.  <u>See</u> Hardin's Objections at 2–3.  Specifically, Hardin asserts that Officer Richard Wiggins's testimony was contradicted at several points and was "spurious, if not untrustworthy."  <u>Id.</u>  In this regard, Hardin points to Officer Wiggins's testimony that he initially saw only one person in Hardin's truck and that, as he walked toward the truck, he saw the minor's head appear.  Tr. at 22.  Hardin argues that this testimony is false because, prior to exiting his patrol vehicle, Officer Wiggins radioed dispatch that the truck had two occupants.  <u>See</u> Hardin's Objections at 2.  The Magistrate Judge addressed this possible inconsistency in the Report.  <u>See</u> Report at 8.  In doing so, he accepted Officer Wiggins's explanation on cross examination that he could have seen the minor's head rise up before he got out of his patrol car or that he could have been using his portable radio and called in that there were two occupants as he was exiting his patrol vehicle and walking toward the truck.  <u>See</u> Tr. at 53.  The Magistrate Judge further concluded that the alleged discrepancy did not substantially affect Officer Wiggins's credibility.  <u>See</u> Report at 8.  The undersigned finds the Magistrate Judge's conclusions to be fully supported by the record.

Hardin also asserts that Officer Wiggins's testimony about smelling burnt marijuana could not be correct because Sergeant Chris Ruby did not smell marijuana "within 9 minutes" of when Officer Wiggins had noticed the odor. See Hardin's Objections at 2.  However, the fact that Sergeant Ruby could not smell marijuana when he approached the truck does not mean that the smell did not exist earlier when Officer Wiggins approached.  Notably, while Sergeant Ruby arrived on scene nine minutes after Officer Wiggins arrived, he estimated that he did not approach the truck until ten minutes after he arrived.  See Tr. at 83; Clay County Sheriff's Office Event Report (Doc. 68-8) at 2.  Hardin's objections cast no doubt on the Magistrate Judge's credibility determinations and are due to be overruled.[4]

### ii.  Timing of Seizure and Existence of Reasonable Suspicion

Hardin objects to the Magistrate Judge's recommendation that the Court find that Hardin's initial contact with Officer Wiggins was consensual and that Hardin was not detained until Officer Wiggins asked the minor to step out of the vehicle and speak with him.  See Hardin's Objections at 3–4; Report at 12,

---

[4] Hardin also objects to Officer Wiggins's testimony because Officer Wiggins testified that he left the Clay County Sheriff's Office voluntarily.  See Hardin's Objections at 3.  Hardin contends that Officer Wiggins was under internal investigation and left under the "threat of termination."  Id.  The fact that Officer Wiggins was under internal investigation at the time that he left the Sheriff's Office does not make his testimony that he left voluntarily false.  See Tr. at 56, 87.  Nor is there any evidence regarding the subject matter of this investigation such that it might have any bearing on Officer Wiggins's truthfulness or conduct in this case.  As such, the objection on this basis is without merit.

15.  Upon independent review and for the reasons presented in the Report, the Court determines that the Magistrate Judge's determination that the encounter between Officer Wiggins and Hardin was initially a consensual meeting that did not implicate the Fourth Amendment is correct and due to be adopted.  See Report at 12–14.

Hardin also objects to the Magistrate Judge's recommended finding regarding the existence of reasonable suspicion to detain Hardin.  See Hardin's Objections at 2.  In the Report, the Magistrate Judge found that, when Officer Wiggins asked the minor to exit the vehicle, he had reasonable suspicion to detain Hardin.  See Report at 15.  In making this recommendation, the Magistrate Judge recounted several specific and articulable facts that together gave rise to Officer Wiggins's reasonable suspicion that criminal activity was afoot.  See id. at 16.  Hardin largely ignores these very specific facts that suggested Hardin had engaged in unlawful sexual activity.  Instead, he argues that the Magistrate Judge relied on outdated law and that the smell of marijuana cannot contribute to a finding of reasonable suspicion because hemp was legal in Florida at the time of the stop.  See Hardin's Objections at 2 & n.1. Hardin also notes that Officer Wiggins knew that Hardin and the minor were not strangers and had some familial relationship.  See id. at 2–3.  Last, Hardin

asserts that nervousness and the location of the truck near a closed business cannot support a finding of reasonable suspicion. Id. at 3–4.

Hardin's objections are unavailing. The Magistrate Judge did not rely on outdated law; the Eleventh Circuit continues to affirm that the smell of burnt marijuana can provide probable cause to search a vehicle. See Merricks v. Adkisson, 785 F.3d 553, 560 n.3 (11th Cir. 2015); United States v. Reed, No. 21-10257, 2021 WL 5629980, at *2 (11th Cir. Dec. 1, 2021) (per curiam). Hardin cites no authority for his argument that Florida's new hemp law changes this analysis. See Hardin's Objections at 2 & n.1.[5] Hardin next argues that Officer Wiggins knew that Hardin used to be the minor's stepfather. See id. at 2–3; Tr. at 48. However, he fails to suggest how that fact in any way diminished the officer's reasonable suspicion, based on the facts articulated, that Hardin and the victim had engaged in unlawful sexual activity. See Report at 16. Next, Hardin objects to the reliance on the vehicle occupants' alleged nervousness. See Hardin's Objections at 3. Notably, while nervousness alone may not support a finding of reasonable suspicion, nervousness can contribute to a finding that reasonable suspicion existed under the totality of the circumstances. See United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991) (noting that the defendant's "shaking" and acting "extremely nervous"

---

[5] Indeed, Hardin simply fails to cite any authority suggesting that the smell of marijuana is insufficient to give rise to reasonable suspicion.

supported a finding of reasonable suspicion).  Here, nervousness was just one of the facts identified as supporting the officer's reasonable suspicion.  Finally, Hardin argues that his location—behind an abandoned building—is an insufficient basis to support a Terry[6] stop.  See Hardin's Objections at 4.  Again, Hardin ignores the fact that the officer did not seize Hardin simply upon observing the location of the vehicle.  Rather, he did so only after observing Hardin with his pants unzipped and open, the apparent ages and nervousness of Hardin and the minor, and the smell of burnt marijuana.  Moreover, the location of the vehicle properly contributed to Officer Wiggins's suspicion that Hardin may have been trying to conceal illegal sexual activity.  See Tr. at 15, 19.  The Court finds that the Magistrate Judge's conclusion that, prior to detaining Hardin, Officer Wiggins had a reasonable suspicion is fully supported by the record.

### iii.   Duration of Stop

Hardin objects to the Magistrate Judge's recommended finding that Officer Wiggins's detention of Hardin was not unreasonably prolonged.  See Hardin's Objections at 5; Report at 17.  He argues that "two and one half hours between the initial encounter and the arrest at the scene is excessive" because

---

[6] Terry v. Ohio, 392 U.S. 1 (1968) (holding that a law enforcement officer may stop and briefly detain an individual for investigatory purposes if the officer has a reasonable suspicion that criminal activity may be afoot).

this investigation did not involve "complex nor extraordinary circumstances." Hardin's Objections at 3, 5. The Court concurs with the Magistrate Judge's determination that the stop was not unreasonably prolonged. Contrary to Hardin's assertion, this was not a simple matter. Officer Wiggins had reasonable suspicion that Hardin committed a serious crime that involved a minor victim. Thus, this investigation reasonably required time, attention, and care. In other contexts, courts have approved lengthy detentions when law enforcement officers acted with reasonable diligence under the circumstances to confirm or dispel their reasonable suspicion. See United States v. Simmons, 172 F.3d 775, 780–81 (11th Cir. 1999) (approving a stop that lasted 50 minutes); United States v. Maltais, 403 F.3d 550, 557–58 (8th Cir. 2005) (finding that 3 hours was not an unreasonable delay to wait for a drug-sniffing dog when the police acted diligently and the stop was in a remote area in the early morning); United States v. Frost, 999 F.2d 737, 741–42 (3d Cir. 1993) (finding that a stop and seizure of luggage lasting 80 minutes was reasonable when the police acted diligently to bring a trained canine to the scene). Here, as the Magistrate Judge explained, the officers acted diligently and took reasonable steps to investigate their suspicion. See Report at 17. Although the record does not reveal the exact time that Hardin was arrested, there is no evidence that the officers acted in a dilatory fashion. Thus, the Court will overrule Hardin's objection and adopt the

Magistrate Judge's recommended finding that the length of the detention was reasonably related in scope and duration to the circumstances that warranted detention in the first place.

### iv.    Invocation of the Right to Counsel

In the Report, the Magistrate Judge found that Hardin was properly advised of his Miranda[7] rights and that Hardin never invoked his Fifth Amendment right to counsel.  Report at 19–21.[8]  Hardin objects to this finding, arguing that he did sufficiently invoke his right to counsel when he said, "I'm being as completely honest as I can be without a lawyer being here, presented." Hardin's Objections at 5.  In support of his argument, Hardin discusses Davis v. United States, 512 U.S. 452 (1994), and Cannady v. Dugger, 931 F.2d 752 (11th Cir. 1991).  See Hardin's Objections at 5–6.  However, a comparison of these two cases demonstrates why Hardin's objection is due to be overruled.  In Davis, the Supreme Court agreed with the trial and intermediate appellate court that the statement "Maybe I should talk to a lawyer" was not an unambiguous request for an attorney.  512 U.S. at 462.  In contrast, in Cannady,

---

[7]  Miranda v. Arizona, 384 U.S. 436 (1966) (holding that the Fifth Amendment right against self-incrimination requires that law enforcement advise a person subject to custodial interrogation of the right to remain silent and the right to be represented by an attorney before and during any questioning).

[8]  Hardin asserts that the evidence is not clear about whether he was read his Miranda rights.  Hardin's Objections at 3.  This objection is without merit.  As set forth in the Report, the uncontroverted evidence shows that Officer Wiggins read Hardin his Miranda warnings and confirmed that he understood them and that Hardin acknowledged to Detective Eva Solis that Officer Wiggins had read Hardin his Miranda rights.  See Report at 9, 20.

the Eleventh Circuit found that the statement "I think I should call my lawyer" was an "unequivocal request for counsel."  931 F.2d at 755.

Here, Hardin's statement is more like the ambiguous statement in Davis than the unequivocal invocation in Cannady.  Hardin's statement, "I'm being as completely honest as I can be without a lawyer being here, presented" is susceptible to multiple interpretations and may be even more ambiguous than the statement in Davis.  See 512 U.S. at 462.  Indeed, Hardin's statement could indicate that he wanted a lawyer, but it could also indicate that Hardin was unsure what to do or that Hardin was trying to demonstrate his good-faith cooperation with the police by being honest and not requesting a lawyer. Regardless, Hardin's words certainly were not as unequivocal as the statement "I think I should call my lawyer" in Cannady, see 931 F.2d at 755, which expressed the suspect's clear desire to talk to a lawyer.  Here, Hardin's statement did not unambiguously express a desire to speak to a lawyer.  Based on the foregoing and on the reasons stated by the Magistrate Judge, the Court finds that Hardin did not invoke his right to counsel.  Therefore, the objection is due to be overruled.

### B.    United States' Objection

The United States objects only to the Magistrate Judge's recommended finding that Hardin was seized when Officer Wiggins asked to speak with the

minor.  United States' Objection at 1.  In the United States' view, Hardin was not seized until he exited the truck and was placed in handcuffs.  Id.  Because the Court accepts and adopts the Magistrate Judge's conclusion that Officer Wiggins had reasonable suspicion sufficient to justify a Terry stop at the time he asked to speak with the minor, see Report at 15, the Court need not resolve the United States' objection regarding exactly when the encounter between Officer Wiggins and Hardin became subject to Fourth Amendment scrutiny.[9]  Accordingly, the Court will sustain the objection only to the extent that the Court finds it unnecessary to adopt the specific finding regarding the moment

---

[9]  The United States acknowledges as much.  See United States' Objections at 8 ("[R]egardless of whether defendant was detained at the time the minor victim agreed to exit and speak with Officer Wiggins, or whether he was detained at the time Officer Wiggins had defendant exit the truck and then handcuffed him, the defendant's Fourth Amendment based motion is due to be denied."); see also United States v. Salter, 255 F. App'x 355, 359 (11th Cir. 2007) (per curiam) ("[T]he Government asserts that the seizure did not begin until Sergeant Wright asked Salter and the others to submit to a pat-down.  Salter counters that the initial encounter was a non-consensual seizure at the outset, as 'it was clear' that neither he nor his companions were free to leave.  We need not decide this question, however, because . . . even if the seizure began when Sergeant Wright confronted the trio and told them not to move, there was an objectively reasonable suspicion that criminal activity was afoot, thereby justifying a brief investigatory detention pursuant to Terry.").  Therefore, the Court decides only that Hardin's interaction with Officer Wiggins was certainly consensual before Officer Wiggins asked to speak with the minor outside the truck.  Because Officer Wiggins had reasonable suspicion sufficient to warrant detention of Hardin at the time he asked the minor to exit the vehicle, the Court need not determine whether asking the minor to do so, in fact, resulted in a seizure of Hardin or whether Hardin remained free to leave the area at that time.  Thus, while not suggesting disagreement with the Magistrate Judge's conclusion, the Court finds it unnecessary to adopt the determination regarding the precise moment when the encounter between Hardin and Officer Wiggins turned from a consensual encounter to a Fourth Amendment seizure.

that the interaction between Hardin and Officer Wiggins turned from consensual to non-consensual.

## III.   Conclusion

Upon independent review of the file and for the reasons set forth above, the Court will overrule both Hardin's Objections and the United States' Objection and accept and adopt the legal and factual conclusions recommended by the Magistrate Judge, except as modified here in footnote nine.  Accordingly, it is

**ORDERED:**

1.   Hardin's Objection(s) to Magistrate's Report and Recommendation (Doc. 81) is **OVERRULED**.

2.   The United States' Limited Objection to the Magistrate Judge's Report and Recommendation Concerning Defendant's Motions to Suppress (Doc. 80) is **SUSTAINED, in part, and OVERRULED, in part**.

   a.   The United States' Objection is **SUSTAINED** to the extent that the Report and Recommendation (Doc. 71) is **MODIFIED** only to the extent discussed in footnote nine of this Order.

b.     In all other respects, the United States' Objection is **OVERRULED**.

3.     The Report and Recommendation (Doc. 71), as modified here, is **ADOPTED** as the opinion of the Court.

4.     Defendant's Fourth Amendment Based Motion to Suppress Evidence (Doc. 25) is **DENIED**.

5.     Defendant's Fifth and Sixth Amendment and <u>Miranda</u> Based Motion to Suppress Statements (Doc. 26) is **DENIED**.

6.     Defendant's Supplemental Fourth Amendment Based Motion to Suppress Evidence (Doc. 65) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 3rd day of January, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

The Honorable Joel B. Toomey
United States Magistrate Judge

Counsel of Record